Stephen M. Pezanosky
State Bar No. 15881850
Ian T. Peck
State Bar No. 24013306
Jarom J. Yates
State Bar No. 24071134
**HAYNES AND BOONE, LLP**
301 Commerce Street, Suite 2600
Fort Worth, TX 76102
Telephone: 817.347.6600
Facsimile:  817.347.6650
Email: stephen.pezanosky@haynesboone.com
Email: ian.peck@haynesboone.com
Email: jarom.yates@haynesboone.com

**PROPOSED ATTORNEYS FOR DEBTOR**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FOREST PARK MEDICAL CENTER AT SOUTHLAKE, LLC, | § § | Case No. 16-40273-rfn-11 |
| | § | |
| Debtor. | § | |

**DEBTOR'S MOTION FOR AN ORDER AUTHORIZING
THE REJECTION OF A CERTAIN FOOD SERVICE AGREEMENT
_NUNC PRO TUNC_ TO THE DATE THE MOTION IS FILED**

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE COURT OF THE UNITED STATES BANKRUPTCY COURT AT 501 W. 10TH STREET, ROOM 147, FORT WORTH, TEXAS 76102 BEFORE CLOSE OF BUSINESS ON APRIL 4, 2016, WHICH IS AT LEAST 24 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN.  IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

Forest Park Medical Center at Southlake, LLC ("FPMC Southlake"), debtor-in-possession in the above-referenced chapter 11 case (the "Debtor"), files this *Debtor's Motion for an Order Authorizing the Rejection of a Certain Food Service Agreement Nunc Pro Tunc to the Date the Motion is Filed* (the "Motion") and in support thereof, respectfully represents as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

2. To preserve the value of its assets and restructure its financial affairs, on January 19, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing the above captioned case (the "Chapter 11 Case"). The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

3. An official committee of unsecured creditors has not been appointed in this Chapter 11 case. Further, no trustee or examiner has been requested or appointed in this Chapter 11 case.

4. On January 20, 2016, in connection with the first day hearings in the Chapter 11 Case, the *Statement of Background Information and Declaration of Charles Nasem, Chief Executive Officer of Forest Park Medical Center at Southlake, LLC, in Support of Debtor's Chapter 11 Petition and First-Day Motions* (the "Original Background Statement")[1] was filed

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Original Background Statement.

15638565_1  2

with the Court and is incorporated herein by reference.

5. The Debtor has also filed with the Court the *Statement of Background Information and Declaration of Charles Nasem, Chief Executive Officer of Forest Park Medical Center at Southlake, LLC, in Support of Debtor's Second-Day Motions* (the "Second Background Statement") which is incorporated by reference in this Motion.

6. The Debtor leases and operates a state-of-the-art medical facility (the "Hospital"). Pursuant to the Food Service Agreement Between Valley Services, Inc. and Forest Park Medical Center at Southlake (the "Food Service Agreement"), Valley Services, Inc. ("Valley") manages and operates food services for the Hospital. A true and correct copy of the Food Service Agreement executed on April 25, 2013 is attached hereto as **Exhibit A**.

7. On March 4, 2016, Valley filed its *Motion to Compel Debtor to Assume or Reject Food Services Agreement* (Docket No. 148).

## Relief Requested

8. By this Motion, the Debtor seeks an order rejecting the Food Service Agreement pursuant to Bankruptcy Code § 365. The Debtor requests that the effective date for the rejection of the Food Service Agreement be the date this Motion is filed.

## Basis for Relief Requested

9. Bankruptcy Code § 365(a) provides in relevant part that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Rejection under § 365 is generally intended to enable the debtor to relieve itself and the bankruptcy estate from burdensome and unprofitable contracts in order to preserve and maximize the value of the bankruptcy estate. *See Stewart Title Gaur. Co. v. Old Rep. Nat'l Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (noting that section 365 "allows a trustee to relieve the

bankruptcy estate of burdensome agreements which have not been completely performed.") (citation omitted). Bankruptcy courts use the business judgment standard to determine whether to approve a contract rejection. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (quoting *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 318 U.S. 523, 550 (1943)) ("It is well established that 'the question whether a lease should be rejected . . . is one of business judgment.'").

10. In the sound exercise of its business judgment, the Debtor has determined that the rejection of the Food Service Agreement is in the best interests of its estate and creditors. The Debtor, in its business judgment, believes that the cost and burden to the Debtor and its estate of contracting for the management of food services under the Food Service Agreement outweighs any benefit that the Debtor or its estate might receive. The Debtor is capable of managing and operating any food services needed in-house at the Hospital. Although, the Food Service Agreement terminates on April 21, 2016, it is in the best interest of the Debtor and its estate to reject the Food Service Agreement immediately to reduce post-petition administrative expenses.

11. The Debtor submits that rejection of the Food Service Agreement will therefore benefit the Debtor's estate and creditors, and the Debtor requests approval of the rejection of the Food Service Agreement as of the date of the filing of this Motion.

## Notice

12. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the Debtor and its counsel; (iii) the Debtor's secured creditors; (iv) any official committees in the Chapter 11 Case; (v) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (vi) the 20 largest unsecured creditors of the Debtor; and (vii) all governmental agencies having a regulatory

or statutory interest in these cases. No other or further notice need be provided.

WHEREFORE the Debtor respectfully requests that the Court (i) grant the Motion and (ii) grant such other and further relief as is just and proper.

RESPECTFULLY SUBMITTED this 11th day of March, 2016.

**HAYNES AND BOONE, LLP**

By: */s/ Stephen M. Pezanosky*
Stephen M. Pezanosky
State Bar No. 15881850
Ian T. Peck
State Bar No. 24013306
Jarom J. Yates
State Bar No. 24071134
301 Commerce Street, Suite 2600
Fort Worth, TX 76102
Telephone: 817.347.6600
Facsimile: 817.347.6650
Email: stephen.pezanosky@haynesboone.com
Email: ian.peck@haynesboone.com
Email: jarom.yates@haynesboone.com

**PROPOSED ATTORNEYS FOR DEBTOR**

# EXHIBIT "A"

FOOD SERVICE AGREEMENT

BETWEEN

VALLEY SERVICES, INC.

AND

FOREST PARK MEDICAL CENTER AT SOUTHLAKE

THIS AGREEMENT is made and entered into this 25th day of April, 2013, by and between **FOREST PARK MEDICAL CENTER AT SOUTHLAKE, LLC,** a Texas limited liability company, hereinafter called the "Client", and **VALLEY SERVICES, INC.,** a corporation formed and existing under the laws of the State of Mississippi, with its office and place of business in Jackson, Mississippi, hereinafter called "Valley".

## WITNESSETH:

The parties agree and obligate themselves and successors and assigns as follows:

1. **Term:** The term of this Agreement shall commence on the 22nd day of April 2013 and shall continue until the 21st day of April 2016. This Agreement is automatically renewed at the termination date for successive one (1) year terms unless written cancellation notice is provided by either party to the other at least thirty (30) days prior to the expiration of the term then in effect. In the event any law of the applicable jurisdiction imposes any maximum term, this Agreement shall not be renewed beyond such maximum term.

2. **Termination:** Either party may terminate this Agreement with or without cause by giving thirty (30) days written notice to the other party of its intention to terminate this Agreement at the end of such thirty (30) days.

3. **Obligations of Valley:** Valley is responsible for the following:

   - The preparation of meals
   - Performing all buying and record keeping functions
   - Training food service employees
   - The cost of business licenses and state/local health permits
   - Furnishing supervisory personnel to establish and maintain the operation at a high standard
   - Instituting reliable food cost control methods
   - Maintaining the production kitchen and equipment (the "Food Preparation Facilities") in a sanitary condition and shall at the termination of this Agreement surrender the Food Preparation Facilities to the Client in as good condition as now, ordinary wear and tear excepted. Valley shall not be responsible for the purchase of new equipment or the cost incurred in the repair of the Food Preparation Facilities except for repairs necessitated by negligence of Valley
   - Management and Operation of the full-service physician's lounge, the self-service coffee bar and full-service retail cafeteria
   - Providing full-service caterings as requested by the Client

- Providing a service assistant/hostess for Patient Services Program
- Implementing and maintaining a proactive internal process improvement and quality assurance program

4. **Obligations of the Client:** The Client will be responsible for the following:

   - Providing and furnishing the Food Preparation Facilities and food storage area
   - Providing for the proper repair and maintenance of the Food Preparation Facilities, including plumbing, wiring, or equipment, through its own maintenance staff or by hiring an outside service.
   - Replacing, as necessary, any part of the Food Preparation Facilities
   - Maintaining the Food Preparation Facilities in accordance with all laws, regulations, orders, directives, statutes, and other rules of any federal, state, or local government bureau or department applicable to the Food Preparation Facilities
   - Maintaining adequate fire and hazard insurance on the Food Preparation Facilities
   - Providing and furnishing Valley with a suitable office for the exclusive use of Valley and its managers
   - Providing for any and all real or personal property tax or similar tax pertaining to any Client owned property or equipment

5. **Method of Operation:**

   A. **Food and Supplies for the Food Service Operation:** Valley will order food and supplies necessary for the Client's food service operation from Valley's approved vendors which meet Valley's guidelines and requirements. Valley will pay the vendors directly for such food and supplies.

   B. **Food Service Management Personnel:** Valley will provide the following management employees on location for the Client's food service operation. Valley shall maintain Workers' Compensation Insurance covering the following personnel employed by Valley.

   - Food Service Director
   - Chef
   - Part-Time Registered Dietitian

   Valley shall provide all information and documentation required to render professional services to the Client's patients.

   C. **Other Food Service Personnel:** Valley will employ all other food service personnel in its own name and at its own expense. Valley shall maintain Workers' Compensation Insurance covering the food service personnel employed by it.

6. **Miscellaneous Operational Provisions:**

   A. Valley shall comply with the regulations of the State Board of Health and other healthcare regulatory agencies regulations to the extent as such requirements are consistent with the terms of this Agreement. *CAn*

2

**B.** Valley shall provide management of the Food Preparation Facilities to comply with the accreditation standards of the Healthcare Facilities Accreditation Program of the American Osteopathic Association and State Licensure requirements during the entire period of this Agreement, to the extent Valley is required to comply and such requirements are consistent with the terms of this Agreement.

**C.** The Client will utilize a third party to survey patient satisfaction. So long as the Client utilizes a third party surveyor, Valley's patient satisfaction goals shall be as follows:
- Food Quality Satisfaction Indicator will be in the 85th percentile
- Food Temperature Satisfaction Indicator will be in the 85th percentile
- Courtesy of Person Serving Food Satisfaction Indicator will be in the 85th percentile

**D.** Based on Client and Valley discussions regarding various operating assumptions, the initial year food service budget is projected to be $836,138 (net of food service revenues). This projected budget is subject to change based on requested changes in food service or fluctuations in patient census. Valley management and the Client will meet at least once per quarter to review and discuss actual results and revisions to projected budgets. In addition, Valley management and the Client will meet at other times in the event circumstances or requested changes significantly impact the projected budget.

The initial projected budget includes the following assumptions:
- Average daily census of 7 inpatients
- Patient floor stock of $147.00 per week
- Catering and free meal food cost of $805.00 per week
- Physicians lounge food cost of $1,051.00 per week
- 15% employee discount

**7. Client Costs:** The Client will reimburse Valley for all "Client Costs". Client Costs includes both Operating Costs (as detailed below) and Fringe Benefit and Workers' Compensation Expense (as detailed below).

The term "Operating Costs" as used herein shall mean all of the costs and expenses incurred by Valley on behalf of Client, including, but not limited to, the following:

- The cost of food and other supplies used in the Client's food service operation if Valley pays directly for such food and supplies (the "Food and Supply Cost"). The Food and Supply Cost will be the vendors' invoice price. The Food and Supply Cost will not be reduced by (and the Client will not receive any portion of): (a) any rebates, slotting fees, or volume discounts that Valley receives, or (b) any other payments, credits, or discounts received by Valley as a result of purchases placed by Valley.

- The compensation of all employees on Valley's payroll used to service the Client's food service operation, including, but not limited to, wages (including wages for vacation paid) and payroll taxes (the "Employee Compensation Expense").

- Other expenses including, but not limited to, printing, stationery, office supplies, cleaning supplies, licenses and permits, training for employees, uniforms, employment agency fees and

*CW*

3

relocation expenses for management changes, local and long distance phone service charges and dedicated high speed Internet service charges.

- Any costs associated with any employee that is being transferred from the Client's payroll to Valley's payroll including, but not limited to, accrued benefits, workers' compensation, and employee related lawsuits.

In addition to Operating Costs, the Client will pay Valley a "Fringe Benefit and Workers' Compensation Expense" with such expense to be determined by multiplying 26.75% by the total of gross salary and gross hourly wages for all employees used to service the Client's food service operation. If there is a significant change in condition, as determined solely by Valley, then Valley may increase or decrease the Fringe Benefit and Workers' Compensation Expense. Valley will provide the Client sixty (60) days written notification of any such change in the Fringe Benefit and Workers' Compensation Expense.

In the event that the Client purchases food and/or other supplies directly from vendors then it will not be entitled to any compensation from Valley or any vendor for any rebates, slotting fees, volume discounts, or other payments, credits, or discounts received by Valley as a result of purchases placed by the Client from any vendor.

**8. Management Fee:** In consideration for services provided to the Client, Valley will charge the Client a management fee of Forty Five Thousand Dollars ($45,000.00) per contract year. The management fee amount is based on a gross annual management fee of Forty Eight Thousand Dollars ($48,000.00) less a One Thousand Five Hundred Dollars ($1,500.00) discount for each additional Forest Park location contracted with Valley. Such management fee shall be billed on a pro-rata weekly basis according to Valley's monthly accounting periods. Valley's monthly accounting periods are based on a four (4), four (4), five (5) week cycle.

**9. Management Fee Increase:** In the event the United States Department of Labor Consumer Price Index (CPI) for the month of December indicates an increase, the management fee will be adjusted for the forthcoming contract year based on such CPI percentage increase.

**10. Billing and Payment:** At the end of each accounting period, Valley will bill the Client for the preceding period's charges. Valley's accounting periods are based on a four (4), four (4), five (5) week cycle.

Payments made by the Client to Valley are due within fourteen (14) days of the invoice date. Unpaid invoices due Valley will bear an interest charge of eighteen percent (18%) per annum, or the maximum allowable by law if less, from due date until paid. The Client shall be responsible for all collection costs and attorney's fees incurred by Valley to obtain payment. If Client within seven (7) days of the invoice date disputes any amount claimed by Valley as payable to Valley pursuant to this agreement, Client shall pay Valley the undisputed portion and shall give Valley notice in writing of the disputed amount, specifying the basis of the dispute in reasonable detail. Upon resolution of such dispute, any portion of the disputed amount determined to have been payable shall be disbursed to Valley. During the pendency of any dispute, the above interest charge is applied only to the disputed amount determined by the dispute resolution process to have been payable to Valley.

4

**11. Cash Sales:** All cash sales will be the property of Valley. Valley shall be responsible for collecting and remitting sales tax on applicable cash sales collected by Valley. Valley will credit the Client's invoice for cash collected by retail sales.

**12. Opening Cost:** In addition to other charges specified in this Agreement, the Client agrees to pay Valley $25,000 for cost associated with opening the account ("Opening Cost"). Opening Costs shall include, but are not limited to, manager's relocation expenses and the cost of instruction of the employees of the operation in Valley's methods of operation. Opening Costs shall be due in two (2) installments which are due upon receipt of invoice. The first installment will be invoiced 30 days after the execution of this agreement and the final installment will be invoiced 60 days thereafter. In the event this Agreement is terminated prior to full reimbursement of Valley's Opening Costs, then the Client agrees to pay Valley immediately the amount of any outstanding balance due pursuant to this paragraph.

**13. Vesting Equipment:** Valley will provide equipment and/or decor to be specified in detail in a subsequent written amendment to this Agreement, and as mutually agreed by both parties, in an amount not to exceed the maximum investment as follow:

| Maximum Investment = $100,000 |
| --- |
| Vesting Period = 3 Years |
| Vesting Equipment |
| <ul><li>Patient tray system</li><li>Point of sale system</li><li>Espresso machine</li><li>Two (2) blenders</li><li>Initial smallware</li><li>Additional equipment to be mutually agreed upon by Valley and the Client</li></ul> |

Valley shall be responsible for all personal property taxes of the Vesting Equipment. Valley shall be responsible for the repair, maintenance, and replacement of the Vesting Equipment. However, if it is determined that a malfunction of the Client's equipment caused the damage, the Client shall be responsible for such repair or replacement of the Vesting Equipment. Such expenses for the Vesting Equipment will be included in Client Costs as described in the "Client Costs" section this Agreement.

Valley will vest the Vesting Equipment to the Client after the Vesting Period which commences with the date the Vesting Equipment is placed in service. At the end of the Vesting Period, ownership of the Vesting Equipment will be transferred to the Client. At such time the Client shall be responsible for all personal property taxes, repair, maintenance and replacement expense, and any other expense associated with the Vesting Equipment unless such expense is incurred due to the negligence of Valley.

In the event the Food Service Agreement between Valley and the Client is terminated before the Vesting Period is completed, the Client shall purchase the Vesting Equipment from Valley at a purchase price equal to the book value of the Vesting Equipment. The Vesting Equipment will

be depreciated using the straight-line method. Depreciation for the Vesting Equipment will be included in Client Costs as described in the "Client Costs" section of this Agreement.

**14. Ownership of Inventory:** Valley shall maintain title to all inventories purchased by Valley.

**15. Purchase of Inventory:** Upon termination of this Agreement, either at the expiration date or prior thereof, the Client shall purchase from Valley the present inventory of food and supplies owned by Valley for use in the Client's food service operation at the cost price to Valley. Such purchase of inventory by the Client from Valley shall be only of such merchandise as is of good and merchantable and usable quality.

**16. Credit Privileges:** The Client shall be responsible for any credit privileges extended to the Client staff and employees, either in their own name or the name of the Client.

The Client shall be responsible for any checks accepted by Valley from the Client's staff and employees, either in their own name or in the name of the Client.

It is the policy of the Client to allow groups and organizations to use the Client's facilities for meetings and special functions. The Client shall be responsible for any terms or agreements or payment for services performed for such groups and organizations.

**17. Increase in Costs:** Any increase in costs to Valley resulting from a change in the policies or practices of the Client (including, but not limited to, equipment being operable, renovation, electrical failure), the Federal and/or State minimum wage laws, or any other federal, state, and/or local laws (including the Patient Protection and Affordable Care Act and Health Care and Education Reconciliation Act of 2010) shall necessitate a proportionate increase in Valley's charges to the Client. Valley will provide a sixty (60) day notice of such increased costs.

**18. Tax Exempt Status:** The Client understands and agrees that Valley may charge the Client for state and local sales tax on the <u>full amount</u> of charges and fees billed to the Client unless and until the Client provides documentation, to the sole satisfaction of Valley, which shall not be unreasonably withheld, that demonstrates that the Client is exempt from all or part of the state and/or local sales tax.

In the event that the Client is entitled to an exemption, either partial or complete, from state and local sales tax, the Client will use its best efforts to obtain appropriate documentation indicating such exemption prior to (or simultaneous with) execution of this Agreement.

Furthermore, the Client shall notify Valley promptly should its sales tax status be changed.

**19. Exclusive Right and Use of Facilities:** Valley shall have the exclusive right to occupy and operate during the terms of this Agreement the Food Preparation Facilities of the Client, including the exclusive use of the kitchens, service and storage rooms. Valley shall use the Food Preparation Facilities for the purpose of preparing and serving meals to persons designated by the Client, and for no other purpose, except as may hereinafter be provided.

**20. Insurance:** Valley shall maintain following insurance coverages: *CW*

6

- Workers' compensation insurance with statutory limits.

- Employers liability insurance covering Valley's employees with limits of $1,000,000 per occurrence/aggregate.

- Commercial general liability insurance with limits of $1,000,000 per occurrence/aggregate in personal injury, and $1,000,000 per occurrence and $2,000,000 aggregate in products/completed operations. The General Liability coverage shall waive the care, custody and control exclusion for property damage claims.

- Commercial automobile insurance covering Valley's vehicles with limits of $1,000,000 combined single limit.

Valley shall list Client as a certificate holder for all above noted insurance coverage and cause certificates of insurance to remain current and delivered to the Client upon request.

Each party agrees on behalf of themselves and their insurers to waive rights of subrogation against the other party for any and all property damage and/or bodily injury claims.

Valley shall not be liable to the Client, in any way for damage to the Food Preparation Facilities caused by reason of fire, or other hazard, however caused, or by the reason of an act of God. In any event, Valley shall not be held liable for any cause to an extent which would exceed effective coverage and dollar limits prevailing under the policies of insurance described in this Agreement.

**21. Non-Solicitation of Employees:** It is understood and agreed that each Management Level Employee of Valley, as defined below, has been recruited and trained by Valley at substantial expense. As used herein, Management Level Employee of Valley shall mean (i) any person who is employed by Valley as a food service director/manager or assistant food service director/manager of any food preparation facility operated or managed by Valley, and (ii) any person who is employed by Valley in its regional or corporate offices.

During the term of this Agreement or for a period of one (1) year after this Agreement expires or is terminated for any or no reason, the Client agrees that the Client, directly or indirectly, shall not solicit, employ, contract with, or retain, or assist any other individual, person, firm or other entity in soliciting, employing, contracting with or retaining any Management Level Employee of Valley, including without limitation, any former Management Level Employee of Valley who ceased working for Valley within a twelve (12) month period before or after the expiration or termination of the Agreement, without the prior written consent of Valley. As used herein, any other individual, person, firm or other entity shall include, without limitation, any affiliate of Client and any successor food preparation or food service provider for Client. This provision shall not be applicable in the event such Management Level Employee is a former employee of the Client or employed by the predecessor food service contractor immediately prior to Valley initiating the services contemplated by this Agreement.

In the event of a breach of the above provision, Client and Valley agree that it would be difficult, if not impossible, to accurately predict the amount of damages Valley would suffer. As a result, Client and Valley agree that upon a breach or violation of the above provision, Valley shall be

7

entitled to, and Client shall pay to Valley on demand, liquidated damages in the dollar amount equal to the employee's annual salary. Both Client and Valley agree that the amount of liquidated damages computed as set forth above is a reasonable estimate of and reasonable method of computing Valley's damages. The provisions of this section shall survive the termination or expiration of this Agreement regardless of the reason or cause of the termination or the lack thereof.

**22. Proprietary Information:** During the term of this Agreement, the Client and Valley acknowledge that it may acquire or obtain access to proprietary information or materials (the "Proprietary Items") of the other party. Proprietary Items are defined as confidential information or materials related to the business of Valley and the Client which include, but are not limited to, trade secrets, signage, trademarks, logo, trade dress (including product package design), symbols, slogan emblem, computer software, recipes, diet manuals, videotapes, technical and nontechnical data related to the operations, methods, techniques, processes, finances, existing and future products, actual or potential customers and suppliers, procedure and/or personnel manuals, and any information which has been disclosed to the parties by a third party which each party is obligated to treat as confidential.

All Proprietary Items are confidential to and are and will remain the sole and exclusive property of each party. In the event each party receives, obtains access, or otherwise is exposed to any Proprietary Items, the party will and shall cause its officers, employees, and agents to, (a.) hold the Proprietary Items in trust and in strictest confidence, (b.) not produce, use, distribute or otherwise disseminate the Proprietary Items except to the extent necessary to aid the performance of the services provided by the party, and (c.) otherwise protect the Proprietary Items from disclosure.

Upon request by Valley or the Client and/or termination of this Agreement, the each party shall return all property belonging to the other party including without limitation, all tangible materials (originals or copies) containing or embodying Proprietary Items then in its custody, control, or possession.

**23. Technology:**
  **A. Cabling and Connectivity**
  - If Valley is to use or implement a point-of-sale system, Client shall provide and maintain non-wireless IP network connectivity terminating in CAT-5 or CAT-6 cabling connection between the cash registers, the foodservice office and Valley's router along with an electrical outlet for each point-of-sale station.

  - Client shall provide and maintain a non-wireless IP network connectivity terminating in CAT-5 or CAT-6 cabling connection between the time-clocks, the foodservice office and Valley's router along with an electrical outlet for each time-clock.

  - Client shall allow Valley and the internet provider physical access to the area where a high-speed internet connection will be installed.

  - Client shall allow Valley to install a router and implement a dedicated high-speed internet circuit with full administrative control to establish a connection between

8

    the foodservice office, nutrition/diet user workstations (if any) and Valley's network.

- Valley shall use generally accepted methods for securing the dedicated high-speed circuit and internet connection used by Valley.

### B. Software Licenses and Services

Valley will license the following CBORD products, services, and software maintenance for use in providing services per this Agreement to the Client. Client agrees to pay the following annual maintenance fees related to software, licenses and technology services (collectively, the "Annual Software Maintenance Fees"):

|  | 1st Year Fee | Annual Fee |
|---|---|---|
| Valley Nutritional Database license ("NDB") | $6,000 | $6,000 |
| CBORD NetMenu user license | $950 | $950 |
| **Total** | **$6,950** | **$6,950** |

Valley hereby grants to Client a license to access and use Valley's centralized Nutritional Database ("NDB") for nutritional analysis, menu planning and other operational purposes during the term of this contract. Client acknowledges that the NDB is Valley's proprietary property and that this license does not grant Client the right to copy or backup the NDB in any form or onto any type of media. Valley is responsible for maintaining and backing up the NDB.

In the event of termination of this Agreement, the Client will have no access rights to the NDB as of the effective date of the termination and CBORD licenses will terminate at the end of the then CBORD annual license period.

The Annual Software Maintenance Fees will be included in the Operating Costs as described in the "Client Costs" section of this Agreement and are subject to applicable sales taxes. Any unpaid balance for the then current year Annual Software Maintenance Fees shall be included lump sum in the Operating Costs within the final Client invoice. Annual Software Maintenance Fees are subject to increase each year upon 30 days advance notice by Valley.

**24. Client's Right to Inspect:** Valley shall operate the Food Preparation Facilities in a manner reasonably satisfactory to the Client. The Client shall have the right to inspect the Food Preparation Facilities, and the preparation and service of the meals therein, to determine if such are being operated in a safe, sanitary, and proper manner.

**25. Indemnity:** The Client hereby releases, indemnifies and agrees to hold harmless Valley from and against any loss, liability, claims, damages, costs, and expenses, including without limitation attorneys' fees, asserted by any third-party for claims or actions arising solely out of or as a result of the Client's negligence.

Valley shall likewise release, indemnify and agree to hold harmless the Client from and against any loss, liability, claims, damages, costs, and expenses, including without limitation attorneys'

fees, asserted by any third-party for claims or actions arising solely out of or as a result of Valley's negligence.

**26. Compliance with Regulations:** Each party shall comply with all laws, ordinances, regulations, orders, directives, statutes, and other rules of any federal, state, or local government bureau or department applicable to their activities hereunder.

Valley's employees and agents shall also comply with applicable rules and regulations concerning conduct on the Client's premises which the Client imposes upon its employees and agents provided such rules and/or regulations are not in violation of any federal, state, and/or local laws.

**27. Notice:** Any notice required or permitted to be given shall be in writing and shall be mailed by registered mail, sent via facsimile or personally delivered. A notice shall be deemed to be given three (3) days after it is mailed, sent via facsimile or upon receipt if personally delivered. Any notice to Valley shall be addressed to: Valley Services, Inc., Attn: Contract Administration, P.O. Box 5454, Jackson, Mississippi 39288-5454; and in the case of the Client to: Forest Park Medical Center at Southlake, 421 E. Highway 114, Southlake, Texas 76092. Either party may change its address by giving ten (10) days written notice to the other party.

**28. Relationship of the Parties:** Valley shall at all times act as an independent contractor. No employee of Valley shall be deemed an employee of the Client, and no employee of the Client shall be deemed an employee of Valley. Valley and the Client shall have full responsibility for payment of wages and compensation to their respective employees and for compliance with all applicable federal and state payroll tax requirements with respect to their respective employees. Valley shall be solely responsible for the supervision of its employees in accordance with Equal Opportunity Laws, Executive Orders, and Valley and/or Client policies and procedures. Valley shall have sole control of the manner and means of performing its obligations hereunder.

**29. Equal Opportunity Employment:** In the performance of this Agreement, neither party shall discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin, or age, nor shall either party discriminate against the handicapped, disabled, or veterans, including those of the Vietnam era. Valley shall take affirmative action to insure that, to the extent possible, eligible persons are employed, and that employees are treated, during employment, without discrimination because of their race, color, religion, sex, national origin, age, handicap, disability, or veteran status, including veterans of the Vietnam era.

**30. Force Majeure:** In the event of a business interruption other than that caused by Valley, the Client shall be able to extend to Valley the term of this Agreement by as many days as are involved in the business interruption. Should there be such business interruption, this Agreement shall be renegotiated immediately and such renegotiated Agreement shall last the duration of the business interruption. The definition of business interruption will include, but is not limited to, war, public disorders, acts of enemies, sabotage, strikes, lockouts, picketing, labor difficulties, fires, uncompleted construction, acts of God, accidents, or breakdown, whether or not preventable, or any similar or dissimilar cause beyond the control of either party.

**31. Event of Default and Remedies:** In the event either party defaults in the performance of its obligations under this Agreement and such default is not cured within ten (10) days of the receipt of written notice thereof (or five (5) days in the case of an obligation to pay money), then the

*CAN*

10

non-defaulting party shall have the right, in addition to any other rights it may have, to terminate this Agreement without further notice. If the nature of the default is such that it may not be reasonably cured within ten (10) days, the defaulting party shall not be in default if appropriate cure is commenced within ten (10) days and thereafter a cure is reasonably prosecuted to completion.

**32. Arbitration; Governing Law; Venue:** Any controversy or claim greater than $10,000 arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and shall be binding on all parties. Any controversy or claim less than $10,000 may be heard either in a court of law or, as with claims in excess of $10,000, settled by arbitration. The parties mutually agree that the proper locale for any such arbitration proceeding shall be Dallas, Texas. Judgment on any award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

Any judicial proceedings filed by either party to enforce the terms of this Agreement shall be held in either Federal District Court for the Northern District of Texas or the appropriate state court (either Chancery or Circuit) located in Dallas County, Texas.

The prevailing party in any controversy or proceeding (whether judicial or arbitration in nature) shall be entitled to a recovery of all of its expenses incurred in enforcing this Agreement, including but not limited to all filing or administrative fees, attorneys' fees and court costs.

Any claim or controversy arising out of this Agreement, regardless of whether heard by a judge or by an arbitrator, shall be governed by the laws of the State of Texas without regard to any conflicts of laws or principles.

**33. Assignment:** Neither Valley nor the Client may assign or transfer this Agreement in whole or in part without the written consent of the other party. Such consent shall not be unreasonably withheld. Valley shall have no right to sublet or underlet any portion of said Food Preparation Facilities.

**34. Headings and Captions:** All headings and captions appearing in this Agreement are inserted for purposes of convenience and reference only, and shall not be used to construe or interpret any provision hereof.

**35. Severability:** If any term, covenant, or condition of this Agreement or the application thereof to any person or circumstance shall be invalid or unenforceable, the remainder of this Agreement and the application of any term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and all other terms shall be valid and enforceable to the fullest extent permitted by the law.

**36. Waiver of Contractual Right:** The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

**37. Entire Agreement; Modification:** It is mutually agreed that this Agreement sets forth the entire agreement of the parties with respect to the subject matter hereof, and supersedes all existing written or oral agreements between the parties concerning such subject matter. It is

11

**38. Authority:** Valley and the Client each represent that the person executing this Agreement, in duplicate, has been duly and validly authorized to execute this Agreement on their behalf and that they have full power and authority under all applicable laws and their respective articles of incorporation, bylaws or other governing instrument to enter into this Agreement and to perform their obligations hereunder.

| VALLEY SERVICES, INC. | FOREST PARK MEDICAL CENTER AT SOUTHLAKE |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Title: President & CEO | Title: CEO |
| Date: 5/6/2013 | Date: 4-25-13 |
| Attest: | Attest: |
| By: _[signature]_ | By: _____ |

12